# Kennedy et al. v. Lack et al.

May 14, 1940.

Joe L. Price, Judge.

L. B. Alexander for appellants.

C. C. Grassham for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This litigation involves the sale in the early part of 1933 of all of the assets of the Clark-Lack Grocery Company, Inc., of Paducah, by the assignee, F. S. Lack, to his father, F. E. Lack, a stockholder, and the principal creditor of the Company, under Section 87 of the Statutes. The price paid was approximately $54,800 (the amount of the debts of the Company). An appraisal made about the time of the assignment showed that the Company's assets were worth approximately $46,000.

The appellants owned the majority of the stock of the Grocery Company. As indicated above, there was nothing left for them because the Company's debts exceeded its assets, according to the figures referred to above. Following the final order of the McCracken county court confirming the sale of the assignee, March 13, 1933, the parties who are the appellants herein appealed to the McCracken circuit court under Section 88 of the Statutes. Suffice it to say here that, while the appellees seriously contend that since the appellants were stockholders and not creditors of the Company they had neither the right to file exceptions to the sale in the county court nor to prosecute an appeal to the circuit court, we are disposed to pass this question and dispose of the case on its merits. See Butler v. Dillehay Brick Company's Trustee, 187 Ky. 224, 219 S. W. 154. On March 25, 1938, the circuit court entered a judgment dismissing the appeal. This action we interpret as meaning that the circuit court affirmed the judgment of the county court. It is from that judgment that this appeal is being prosecuted.

In general, it is contended by the appellants that the assignee did not properly handle the affairs of the Company and that the sale to his father was fraudulent (incidentally, a substantial part of the Company, now known as the Lack Grocery Company, has come into the hands of the assignee). It is also insisted that the proceedings in the county court were irregular and erroneous, that a certain tract of real estate belonging to the Company was not sold at public sale, and further that the notes and accounts of the Company were not sold in accordance with Section 94 of the Statutes. It is also contended that the assets of the Company were worth

far in excess of $46,000. A considerable part of the appellants' brief is devoted to the last question.

Subsequent to the assignment on January 19, 1933, which was made by a majority vote of the Board of Directors, all directors being present, the stockholders other than the Lacks and Earhart met and attempted to elect from their group new officers for the Company. On January 30, 1933, the officers thusly elected filed a petition in the Federal Court for the Western District of Kentucky in the name of the Clark-Lack Grocery Company seeking to have the company declared a bankrupt. The petition set forth among other things:

"* * * that it owes debts, which it is unable to pay in full, and that it is willing to surrender all of its property for the benefit of its creditors, and desires to obtain the benefit of the Act of Congress relating to Bankruptcy.

"That the schedule hereto annexed marked 'A,' and verified by your petitioners' oath contains a full and true statement of all of its debts so far as it is possible to ascertain, and the names and places of residence of all of its creditors, and such further statement concerning its debts as are required by the provision of said acts.

"That the schedule hereto annexed marked 'B,' and verified by your petitioners' oath contains an accurate inventory of all of its property, both real and personal, and such further statements concerning said property, as are required by the provisions of said Act. * * *"

The schedule of debts and the inventory of assets referred to in the part of the petition just quoted were the same statements upon which the assignee was acting. All of the debts of the Company had been satisfied before the objections filed to the petition by the assignee of the Company and F. E. Lack, F. S. Lack and F. W. Earhart as directors and stockholders of the Company were considered. After proof was heard the petition in bankruptcy was dismissed, as it appeared that when the petition was filed the petitioner did not owe any debts.

We have examined the record carefully, and, while it appears that some of the steps taken prior to the time of the assignment and immediately thereafter were

hastily taken and were such as to arouse some suspicion, we can not escape the conclusion that the action of the circuit court in affirming the judgment of the county court was correct. Unquestionably, some of the proceedings in the county court were irregular, but, as will hereinafter be pointed out, subsequent proceedings in that court were such as to remove question as to the prejudice of the appellants' substantial rights.

The Grocery Company owed F. S. Lack something in the neighborhood of $40,000. While he was one of the minority stockholders. it is. obvious that it was his money that was keeping the concern going. He was in ill health. Economic conditions were such in the early part of 1933 that one with a substantial sum loaned to a concern whose financial outlook was at least beclouded would have been justified in manifesting concern as to its security.

On January 24th, the day the sale was made to F E. Lack, he addressed a communication to the majority stockholders in which he said among other things:

"However, I desire to propose to you, separately and collectively, that, if you will, within ten (10) days from this day, repay to me in cash money (currency of the United States), the purchase price, which I have paid and agreed to pay, I shall be pleased to turn over to either of you, all of you, or your associates, the entire assets purchased by me from the Assignee of Clark-Lack Grocery Company. The repayment shall be made by ten o'clock A. M., on February 3, 1933, at the cashier's window of the Citizens Savings Bank, Paducah, Kentucky. If you desire to conclude the matter earlier than then, I shall be pleased to receive the money."

Exceptions to the sale were subsequently filed by the appellants in the county court. On February 21st the assignee and the purchaser petitioned the county court to notify the majority group of stockholders of their petition and report wherein they requested the court to make an order setting aside the sale in the event the parties filing exceptions, or any other person, would pay cash, or guarantee to pay cash in excess of the amount for which F. E. Lack had agreed to purchase the assets of the Company. On March 2nd the assignee reported that he had confirmed the sale and resold the

assets of the Company to F. E. Lack, and that there were no other bids or offers of purchase. As heretofore indicated the county court, on March 13, 1933, finally confirmed the sale made by the assignee to F. E. Lack and overruled and dismissed the exceptions.

It is obvious from what has been said that it is our conclusion that the manner in which the notes and accounts were sold was not in violation of Section 94 of the Statutes. As to the sale of the small tract of real estate, it is not our view that Section 87 of the Statutes requires that in the event of an assignment the real estate of the assignor must be sold by the assignee at a public sale.

Prior to its amendment by c. 42, Acts 1898, Section 87 read in part:

"Real property shall be sold in the same manner and upon the same terms as real property sold at decretal sale * * *." Acts 1894, c. 83, Section 14.

By the Act just mentioned the words "when sold at public sale," and which are now in the statute, were added after the words "real property." It is clear that the legislature intended, by the insertion of the words just mentioned, that in the event real property was sold at public sale it should be sold in the same manner and upon the same terms as property sold at a decretal sale, but it does not follow that all sales of realty under such circumstances must be at public sale. A further amendment to Section 87 by the Act of 1898 provided that, in the event of the sale of real estate at a public sale, the purchaser could pay cash for the property. As pointed out in the case of Cook v. Burton, 92 S. W. 322, 29 Ky. Law Rep. 28, when property is assigned for the benefit of the creditors it is in the possession of the court and under Section 87 of the Statutes the assignee only has authority to sell and convey so much of the assigned real estate as he is directed by the court to sell. In the case before us the assignee was authorized by the county court to sell all of the assets of the Grocery Company. It can be seen, therefore, that there is no basis for the objection raised as to the manner in which the small tract of real estate was sold.

It follows from what has been said that the judgment of the lower court should be and it is affirmed.