UNITED STATES of America

v.

Bernard P. ROME et al.

Civ. A. No. 73–2459–F.

United States District Court,
D. Massachusetts.

June 8, 1976.

Wayne Hollingsworth, Asst. U. S. Atty.,
Boston, Mass., for plaintiff.

Gordon N. Schultz, Wasserman & Salter, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

FREEDMAN, District Judge.

■ This case is before the Court on plaintiff's motion for summary judgment. Defendants' opposition to that motion deals solely with an issue that has apparently not been specifically dealt with before: Does 31 U.S.C. § 191, as applied, create and impose an unreasonable classification between proceedings involving assignments for the benefit of creditors and bankruptcy proceedings, in that section 191 is applicable to, and permits, the collection of tax penalties in assignment proceedings, but, by virtue of section 57(j) of the Bankruptcy Act, as amended, 11 U.S.C. § 93(j), is inapplicable to, and does not permit, the collection of such penalties in bankruptcy proceedings? Defendants have claimed that this differentiation regarding the collection of tax penalties is repugnant to the Fifth Amendment of the Constitution, in that it is arbitrary, capricious, and devoid of reasonable classification. After careful consideration of the memoranda and arguments of counsel, as well as the relevant authorities, the Court feels it must answer defendants' question in the negative and order that plaintiff's motion for summary judgment be granted.

The parties have stipulated to the material facts. On September 23, 1970, Associated Chemical Corporation made an assignment for the benefit of creditors, thereby becoming an insolvent debtor under 31 U.S.C. § 191. Defendants were appointed co-assignees for the benefit of creditors of Associated Chemical, and thus became fiduciaries within the scope of 31 U.S.C. § 192. At the time of the assignment for the benefit of creditors, Associated Chemical was indebted to the plaintiff, the United States of America, for federal withholding, F.I.C.A., and Federal Unemployment Tax Act taxes, together with penalties and interest. The United States, through the Internal Revenue Service (IRS), timely filed with defendants proofs of claim with respect to all of the above mentioned taxes, penalties,

and interest. Defendants thereafter paid all of the claims of the IRS with the exception of $982.28, which sum represents delinquency, negligence and failure to deposit penalties for the second and third quarters of 1970, respectively, assessed pursuant to sections 6651, 6653(a), and 6656 of the Internal Revenue Code of 1954, plus interest accrued prior to September 23, 1970. Total penalties were $965.38. Total interest was $16.90. Defendants have paid other general and unsecured creditors of Associated Chemical, but have refused on demand to pay to the IRS the sum of $982.28. The above penalties do not represent any pecuniary loss to the United States.

31 U.S.C. § 191 provides in pertinent part:

> Whenever any person indebted to the United States is insolvent, . . . the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor . . . makes a voluntary assignment . . . .

Section 57(j) of the Bankruptcy Act, 11 U.S.C. § 93(j), provides:

> Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued on the amount of such loss according to law.

■ The effect of section 191 of Title 31 is clear: Where a debtor makes an assignment for the benefit of creditors, as in the instant case, debts owed to the United States must be satisfied first. It has long been settled that this priority applies to tax penalties. *County of Spokane v. United States*, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621 (1969). *See Jobbers Credit Association, Inc. v. United States*, 164 F.Supp. 22, 24 (E.D.N.Y.1958). It is equally clear that, by virtue of section 57(j) of the Bankruptcy Act, there can be no collection of such penalties in bankruptcy cases.

Defendants argue that there is no rational basis for distinguishing between assignment proceedings and bankruptcy proceedings in the collection of non-pecuniary loss penalties. To support such an assertion, they present excerpts from various cases which discuss the similarity between the two proceedings. Defendants state that "[t]he purpose of both proceedings is the administration and equitable distribution of the debtor's estate among its creditors." They do concede, however, that there is one difference "of any possible significance:" Only in bankruptcy proceedings is the debtor discharged from further obligations. Yet it is defendants' claim that this difference is of no consequence in deciding the constitutional issue raised in this case. Their argument in this regard is twofold: When dealing with corporations, as in this case, an assignment for the benefit of creditors is the practical equivalent of a discharge since a corporate entity is usually not rehabilitated once such an assignment is made, and; the discharge of the debtor is an incident feature of bankruptcy.

In response to the issue of constitutionality raised by defendants, plaintiff claims that that issue has been litigated twice, with the United States prevailing in both instances. The cases referred to by plaintiff are *Jobbers Credit Association, supra,* and *In re Campbell and Campbell, Inc.,* 131 Vt. 617, 313 A.2d 397 (1973). However, after reviewing those cases, I must agree with defendants in their reply that those two cases only interpret 31 U.S.C. § 191 as applying to assignment proceedings and not to proceedings in bankruptcy. Neither deal with the issue found in the instant case. The Court therefore turns to an analysis of 31 U.S.C. § 191 and section 57(j) of the Bankruptcy Act.

■ There appears to be no doubt that the Congress has the power to establish the priority of claims as found in section 191. In *Spokane County, supra,* Chief Justice Taft stated:

> The constitutional validity of the priority of claims of the United States against insolvent debtors, declared in § 3466 [31 U.S.C. § 191], was established by this Court very early in the history of the Government. *United States v. Fisher,* 2 Cranch 358.

279 U.S. at 87, 49 S.Ct. at 322. The statute has been in existence without significant change since 1797, and is to be construed liberally to achieve its broad purpose of protecting public revenues. *United States v. Key,* 397 U.S. 322, 324, 90 S.Ct. 1049, 25 L.Ed.2d 340 (1970).

■ The role of Congress in the field of bankruptcy was established by Article 1, Section 8 of the Constitution, which states in pertinent part that "The Congress shall have Power . . . To establish . . uniform Laws on the subject of Bankruptcies throughout the United States." While this power of Congress is plenary, it is, like other substantive powers of that governmental body, subject to constitutional guarantees set forth in the Fifth Amendment. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 589, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). The constitutionality of the Bankruptcy Act of 1898, which, with amendments, constitutes title 11 of the United States Code, has been consistently affirmed by the nation's courts, and there is no argument by defendants that Congress does not have the power to control the administration of bankrupt estates.

The authorities are in full agreement as to the purpose of section 57(j) of the Bankruptcy Act. One noted commentator states:

> The purpose of the provision is merely to protect general creditors against reduction of their dividend by reason of penalties or forfeitures owing by the bankrupt to the United States or any state or subdivision thereof. . . .
>
> . . . [T]here is . . . the natural tendency and task of the bankruptcy law to mitigate as far as possible the losses to be sustained by creditors, and under this aspect there is an undeniable equity on the postulate that participation in the estate should be denied to a creditor who has neither in some degree contributed to the distributable funds (*e. g.,*

by the governmental protection on which taxation is supposed to be based), nor has suffered a pecuniary loss by parting with something in money's worth.

3 *Collier on Bankruptcy* ¶ 57.22[1] (1974). The language in *Goggin v. United States*, 140 F.Supp. 557 (Ct.Cl.1956), *vacated on other grounds*, 152 F.Supp. 78, 138 Ct.Cl. 279 (1957), is representative of the attitude of the courts:

> When Congress, in [section 57(j)], drew a distinction between a penalty and a forfeiture, on the one hand, and the pecuniary loss sustained, on the other, we think it meant that an arbitrarily set amount, even if it could reasonably be regarded as liquidated damages, should not be put in competition with the claims of the ordinary creditors of the bankrupt.

*Id.* at 560.

■ A voluntary assignment for the benefit of creditors presents a procedure different from that of bankruptcy. Such an assignment has been defined as

> a transfer without compulsion of law by a debtor of his property to an assignee in trust, to apply the same or the proceeds thereof to the payment of his debts and to return the surplus, if any, to the debtor.

*United States v. Gotwals*, 156 F.2d 692, 695, n. 3, *cert. denied*, 329 U.S. 781, 67 S.Ct. 204, 91 L.Ed. 670 (1946). Being undertaken voluntarily, it can be looked upon as "a generous gesture on the part of a hard pressed debtor." *In re Bradley*, 27 F.Supp. 475, 477 (E.D.Ky.1939). Assignments for the benefit of creditors are regulated by state statute, as by Mass.Gen.Laws Ann. c. 203 in the case of defendants herein. Such assignments, unlike bankruptcy, do not totally discharge a debtor of his obligations to creditors. While a debtor may transfer his property to a trustee so that proceeds therefrom may be applied on a pro rata basis toward his debts, absent express agreement by his creditors to accept the proceeds as full satisfaction of their claims, the debtor is not released from payment of any unpaid balances. 6A C.J.S. *Assignments for Benefit of Creditors* § 169 (1975); 8 C.J.S. *Bank-*

*ruptcy* § 14 (1962). It has long been the rule that state statutes regulating assignments for the benefit of creditors are not necessarily inconsistent with the purposes of the Bankruptcy Act. *See, e. g., Pobreslo v. Boyd Co.*, 287 U.S. 518, 53 S.Ct. 262, 77 L.Ed. 469 (1933). Such statutes have, however, been suspended where they provide for discharge of the debtor. *See, e. g., Boese v. King*, 108 U.S. 379, 384, 2 S.Ct. 765, 27 L.Ed. 760 (1883); *In re Wittstein*, 166 F.Supp. 122, 124 (D.V.I.1958).

■ This Court does not feel that by promulgation of the two statutes in question, Congress has infringed upon the Due Process Clause of the Fifth Amendment. In the Bankruptcy Act, it established laws which uniformly apply to all bankrupts. In section 57(j) of that Act it has specifically provided that tax penalties are not recoverable. Consequently, in that instance Congress has eliminated the United States as a creditor. Were it not for section 57(j), as a creditor, the United States would be entitled to collect such a debt. Clearly, since the Bankruptcy Act deals only with bankruptcy proceedings, Congress has not disallowed collection of tax penalties in other situations. In such instances the United States still remains a creditor. The fact that, in a state proceeding for an assignment for the benefit of creditors, Congress has not disallowed the United States' claims for tax penalties does not violate due process. Further, that posture is not changed by the existence of 31 U.S.C. § 191. That section does not give the United States the status of creditor. It merely gives its claim a priority over all others. While it is arguably true that both proceedings in bankruptcy and proceedings in assignments for the benefit of creditors are essentially the same, it must be remembered that they are controlled by two different statutory plans, one state and one federal. Both plans treat uniformly the individuals toward which they are directed. I do not feel that a due process question is raised simply because the Bankruptcy Act affects debtors in a manner that is at variance with the way debtors are affected by the laws of the states.

Plaintiffs' motion for summary judgment is granted. Defendants are ordered to pay to plaintiff the amount of $982.28, plus interest from February 11, 1972, the date of plaintiff's claims for the pertinent liabilities.